IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROTECT OUR PARKS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 21-cv-2006 |
| | ) | |
| PETE BUTTIGIEG, | ) | |
| SECRETARY OF THE U.S. DEPARTMENT | ) | |
| OF TRANSPORTATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF PLAINTIFFS' MOTION FOR RECONSIDERATION
OF MINUTE ENTRY OF APRIL 22, 2021**

Plaintiffs in the instant action ("Plaintiffs") respectfully notify this Court that they have today filed a motion for reconsideration in Case No. 18-cv-3424 of Judge Blakey's April 22, 2021 minute entry which granted the City of Chicago's and the Chicago Park District's ("Moving Defendants") motion for reassignment of the case to that court.

Plaintiffs dispute the Moving Defendants' arguments that Local Rule 40.3(b)(2) is applicable to Plaintiffs' claims in the instant action. As set forth in the attached motion, Plaintiffs' newly filed matter does not involve only the parties from the prior law suit (indeed, the new suit only has one Plaintiff who was involved in the prior litigation), it also includes six new Plaintiffs who had no participation or role whatsoever before this Court in the prior suit. And those new Plaintiffs (as well as Plaintiff Protect Our Parks, Inc., which was also a plaintiff in the prior matter) bring new claims, advancing issues that were not part of the prior action. Their focus is on actions undertaken by various federal and state related entities, working in tandem with the Moving Defendants and the Obama Foundation, in regards to certain federal reviews and decisions

governed by an extensive federal regulatory framework that implicates at least three overlapping statutes: the Transportation Act of 1966; the National Historic Preservation Act of 1966; and the National Environmental Protection Act of 1969. And although the new complaint contains some allegations that overlap those in the prior action, the federal reviews turn on different statutory provisions that necessarily raise new and independent claims that were not before that court in the previous litigation. Further, because the Seventh Circuit has determined that the Court in the prior matter lacked subject matter jurisdiction, there has been no determination on the merits on any of the issues under the new complaint.

Based on facts and arguments more fully set forth in their motion, Plaintiffs believe the motion for reassignment should be denied, and that the case should remain before this Court.

Dated: April 26, 2021  Respectfully submitted,

Protect Our Parks, Inc.; Nichols Park Advisory Council; Stephanie Franklin; Sid E. Williams; Bren E. Sheriff; W.J.T. Mitchell; and Jamie Kalven

By:  /s/ Michael Rachlis
         One of their attorneys

Richard Epstein
16 Thomas Place
Norwalk CT 06853
Raepstein43@gmail.com

Michael Rachlis (IL Bar No. 6203745)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3950 (gen.)
(312) 733-3952 (fax)
mrachlis@rdaplaw.net

**CERTIFICATE OF SERVICE**

  I certify that, on April 26, 2021 a true and correct copy of the foregoing Notice was filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. Copies of the Notice were served via the CM/ECF system upon counsel for the parties.

                /s/ Michael Rachlis
                Michael Rachlis

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| Protect Our Parks, Inc., Charlotte Adelman, Maria Valencia, and Jeremiah Jurevis, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-3424 |
| v. | ) ) | Honorable John Robert Blakey |
| Chicago Park District and City of Chicago, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR
RECONSIDERATION OF MINUTE ENTRY OF APRIL 22, 2021**

On the afternoon of April 19, 2021, the City of Chicago and Chicago Park District (the "Moving Defendants") filed a motion for reassignment of a new case filed by seven plaintiffs (Case No. 21-cv-2006) against twelve defendants. Such motion was noticed for hearing on April 27, 2021. On April 22, 2021, this Court entered this order in the record:

> MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendants' motion to reassign [176]. Consistent with Local Rule 40.3(b)(2), Case No. 21-cv-2006 should have been directly assigned to this Court. But Plaintiffs failed to note the related case on their civil cover sheet [3] and, as a result, the matter was instead randomly assigned to Judge Alonso. Because Case No. 21-cv-2006 falls squarely within Rule 40.3(b)(2), this Court, with the agreement of Judge Alonso, hereby requests that the Executive Committee reassign the matter here. The 4/27/21 Notice of Motion date is stricken, and the parties need not appear. Mailed notice(gel, )

Such ruling was made before the date noticed for hearing and without having heard from any of the Plaintiffs in Case No. 21-cv-2006, who had not had an opportunity to submit their position and authorities prior to the issuance of the decision (which came five days before the scheduled hearing). The Plaintiffs in Case No. 21-cv-2006 ("Plaintiffs") file this motion for reconsideration so that they can present law and fact not raised by the Moving Defendants and not

1

considered in deciding their motion. In connection with the motion, Plaintiffs note the following points.

First, Plaintiffs believe that as a matter of fundamental fairness they should, at a minimum, be able to submit their opposition and have it considered on the reassignment issue before the point is resolved by this Court.

Second, the overall position of the case remains problematic because the Court's brief order states that the "Plaintiffs failed to note the related case on the civil service sheet." However, the reason why the Plaintiffs did give that notice is because they did *not* file a related case within the meaning of Local Rule 40.3(b)(2) as further explained below. Moreover, without hearing from the Plaintiffs, other arguments of the Moving Defendants – such as the moving parties' suggestion of forum shopping – were left unaddressed.

As further explained below, Plaintiffs believe that the law and facts that were not part of the Moving Defendants' motion or considered do not support this Court's conclusions or the assertions of the Moving Defendants. This motion for reconsideration sets out the relevant considerations as to why the April 22, 2021 minute entry is incorrect and should be withdrawn, and the motion for reassignment denied.

## ORIGINS OF THE CURRENT DISPUTE

Approximately one week ago, seven plaintiffs filed a new complaint involving six entirely new plaintiffs, ten entirely new defendants, and entirely new and critical issues arising under several federal statutes, issues that did come into existence until near the filing of the instant lawsuit.

Together, those statutes impose a complex regulatory framework that erects strong and explicit protections for public parks against new structures and projects that threaten to compromise their historical and environmental integrity. These statutes have been purposefully

2

and improperly short-circuited (along with other heretofore previously undecided issues and claims) in the administrative procedures leading up to the initial agency approvals involving the construction of the Obama Presidential Center ("OPC"), along with the destruction of its internal road system, its mature trees, overall architecture and beauty and its undisputed historical significance.

The Plaintiffs in this action filed suit in the Eastern Division of the Northern District of Illinois. Consistent with the district court's local rules, this matter was randomly assigned to the calendar of Judge Jorge Alonso. Such random assignments are the norm, and it is only by exception that such assignments are overturned.

The City of Chicago (the "City") and the Chicago Park District ("Park District"), who were defendants in a matter previously pending before this Court, seek to invoke this narrow rule for partisan advantage, by overturning this random assignment. They are joined by no other litigant in the new case, except their co-defendant the Obama Foundation (the "Foundation"). The sole argument of the Moving Defendants is that the reassignment is required because one of the Plaintiffs (Protect Our Parks, Inc.) ("POP") had previously brought suit against the City and Park District challenging "governmental authorization for the development of the Obama Presidential Center." They identify no judicial efficiency that arises from deviating the norm of random assignment of judges, which is a fixture everywhere throughout the federal system.

As further elaborated below, the newly filed matter does not involve only the parties from the initial law suit (indeed, the new suit only has one Plaintiff who was involved in the prior litigation). It also includes six new Plaintiffs, including individuals and an organization – diverse in gender, race and age – who live in areas near Jackson Park and who had no participation or role whatsoever before this Court in the prior suit. The new Plaintiffs include long established African-

3

American families in the South Side community near Jackson Park such as those of Plaintiffs Brenda Sheriff and Sid Williams, long time Hyde Park resident and prominent University of Chicago Professor W.J.T Mitchell, long-time Hyde Park resident, journalist and author Jamie Kalven, as well as another long time South Side resident Stephanie Franklin and the Nichols Park Advisory Council (a consulting party in conjunction to the federal reviews at issue).

And those new Plaintiffs (as well as Plaintiff Protect Our Parks, Inc. ("POP"), which was also a plaintiff in the matter before this Court) bring new claims. These parties advance issues that were not before, nor could have been, part of the prior action. Their focus is on various actions undertaken by various federal and state related entities, working in tandem with the City, Park District, and the Foundation in regards to the various federal reviews and decisions governed by an extensive federal regulatory framework that implicates at least three overlapping statutes: the Transportation Act of 1966; the National Historic Preservation Act of 1966; and the National Environmental Protection Act of 1969. The Plaintiffs can show that all of these reviews short-changed the require reviews, resulting in Findings of No Significant Environmental Impact ("FONSIs") and other approvals. It is this raft of procedural and substantive mistakes that lie at the core of these law suits against the Moving Defendants and the other defendants. To be sure, the complete statement of complaint contains some allegations that overlap those in the prior complaint that was before this court. Nonetheless, the federal reviews turn on different statutory provisions that necessarily raise new and independent claims that were not before the court in the previous limitation. Further, given the Seventh Circuit has determined that this Court lacked subject matter jurisdiction, as matters now stand, there has been no determination on the merits on any of the issues under the new complaint.

Under these facts and circumstances, the motion for reassignment is properly denied.

4

## RELEVANT BACKGROUND

It is beyond dispute that the thrust of the new complaint is directed towards new claims brought by new plaintiffs against a group of new defendants. The gist of the claim is that each of these defendants has extensive involvement, either directly or indirectly, in the federal review process necessitated by the proposal of the City to build a new Obama Presidential Center in Jackson Park.

The new complaint outlines the history underlying the federal reviews. It then discusses those reviews which led to the permitting needed to begin construction of various statutory schemes including the National Historic Preservation Act, the National Environmental Policy Act, the Urban Park Recreation and Recovery Act, the Department of Transportation Act, the Rivers and Harbors Act, and the Clean Water Act. The outcomes of those reviews had not been published at the time of previous action that the Moving Defendants insist involve the same subject matter. The reviews themselves were undertaken by a myriad of the other parties with formal control over the proceedings, none of whom were, or could have been, joined in that prior proceeding. The new complaint proceeds to outline challenges associated with those federal reviews and the resulting permits granted thereunder. In this litigation, ten of twelve defendants are all brand new parties whose actions are challenged in the new plaintiffs' request for declaratory and injunctive relief.

None of these federal actions or federal regulatory frameworks were at issue in the earlier action. The sole focus of the Moving Defendants are two items and four paragraphs (of the fifteen different causes of action) which they claim are similar and relate to public trust and *ultra vires* theories. However, not only did no new plaintiff have any role or participation in those claims, but none of those claims has been adjudicated on the merits, given that the claims were dismissed

5

for lack of subject matter jurisdiction grounds by the Seventh Circuit. *See, e.g., Citadel Securities, LLC v. Chicago Board Options Exchange, Inc.,* 808 F. 3d 694, 701 (7th Cir. 2015) (explaining dismissal for lack of subject matter jurisdiction is not a decision on the merits).

## ARGUMENT

Moving Defendants have filed for reassignment of this matter to this Court. Other than the Foundation, none of the remaining parties actively support the Moving Defendants' motion; to that point, and as the Moving Defendants note, the seven Plaintiffs object and the remaining federal or state defendants have not joined to support to this motion.

Local Rule 40.3(b)(2) reads:

> When a case is dismissed with prejudice or without, and a second case is filed involving the same parties and relating to the same subject matter, the second case shall be assigned to the judge to whom the first case was assigned.

The City and Park District advance the broadest (but unsupported) possible construction, such that so long as at least one party and one issue overlap the case "shall be assigned" to the initial judge. As described below, the position advanced by the Moving Defendants is at odds with established legal principles, and opens up the window for forum shopping that the Moving Defendants purport to close. The motion must be denied.

### I. Random Assignment Of Cases Is The Preferred Method Of Assignment.

The presumption and practice of the Northern District is to have cases randomly assigned, which is embodied in Local Rule 40.1 which provides as follows:

> **(a) General.** The rules of this Court and any procedures adopted by the Court that deal with the assignment and reassignment of cases shall be construed to secure an equitable distribution of cases, both in quantity and kind, among the judges. Except as specifically provided by the rules of this Court or by procedures adopted by the Court, the assignment of cases shall be by lot.

The comments to the rule provide in relevant part as follows: "This Court has used a random assignment system for more than 50 years. As stated in section (a), an important goal of the system is to achieve 'an equitable distribution of cases, both in quantity and kind, among the judges.'"

The standard practice of the Northern District is widely followed. One recent article on the topic writes: "It is generally thought that cases are randomly assigned to judges at the trial level[]—and that randomness is important." Marin K. Levy, *Panel Assignment in the Federal Courts of Appeals*, 103 Cornell L. Rev. 65, 95 (2017). Available at: https://scholarship.law.cornell.edu/clr/vol103/iss1/2. Professor Levy's article then explains how the random assignment is a safeguard against bias, and it further notes that the ideal of randomness is far easier to achieve with the assignment of trial judges than with appellate panels, where coordination and scheduling difficulties for multiple judges often impose limitations on random assignment. She also notes in a footnote that there is an exception for random assignment in matters dealing with "related cases," for which she then cites S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 13, which contains this pertinent limitation:

> "(2) Limitations on General Rule. Notwithstanding paragraph (a)(1): (A) Civil cases shall not be deemed related merely because they involve common legal issues or the same parties". https://www.nysd.uscourts.gov/sites/default/files/local_rules/rules-2018-10-29.pdf

Here, the random assignment associated with the plaintiffs' new complaint was properly followed with the matter being assigned to Judge Alonso. Complimenting this, the Moving Defendants' motion for reassignment provides no basis for suggesting in any way that Judge Alonso is not able to or in a position to address the matter.

7

## II. Neither The Parties Nor Subject Matter Are The Same For Purposes Of Application Of Local Rule 40.3(b)(2).

The City, Park District, and Foundation seek to avoid the random selection process by claiming that the same parties and same subject matter are involved in the newly filed action. Those arguments are inaccurate on all counts. A typical case in which this particular rule is applied is where a plaintiff voluntarily withdraws a complaint against a given party, which it then refiles in the hope of obtaining a more favorable judge to deal with the same cause of action, the same record and the same defendant. Those exacting conditions are not at issue here.

As an initial matter, the parties in the new complaint are not the same as those involved in the matter previously before this Court. The new action involves six new and different plaintiffs and ten new defendants who, along with the remaining defendants, engaged in actions associated with the various federal statutes and reviews that are the subject matter of this litigation. That a few of these litigants were involved in another case does not somehow make the parties the same for purposes of this provision. Indeed, none of the cases cited by the Moving Defendants (motion at 4) support that proposition.

Second, the subject matter in the two actions is not the same. The predominant claims brought by the Plaintiffs against the myriad of defendants in the new action involve the inadequacy and substantive failings of various federal actions and reviews under various statutes, completion of which occurred well after the Seventh Circuit found a lack of subject matter jurisdiction and vacated this Court's opinion on different substantive claims. Indeed, a review of the new complaint reveals that the overwhelming majority of its claims address those various reviews and their failings, none of which were even remotely part of what this Court previously had before it. Put differently, while there is some overlap, the subject matter of the two suits is not the same.

The relevant case law squarely supports the conclusion that Local Rule 40.3(b)(2) is inapplicable. In *Henry v. U.S.A.*, 2007 WL 9772367 (N.D. Ill. Dec. 11, 2007), an initial challenge was brought by Henry in regards to a certain tax liability, challenging a notice of deficiency letter issued by the IRS. The Court dismissed that matter based on statute of limitation grounds. A second suit was filed later by the exact same plaintiff against the same defendant, involving parallel challenges to the IRS, but this time challenging issues regarding a notice of levy from the IRS (itself related to the earlier deficiency). The United States as defendant sought to reassign the matter back to the judge who handled and dismissed the first matter on statute of limitations grounds, making the same arguments that the Moving Defendants make here. Those were rejected by the district court, as it stated as follows:

> In the first case, No. 06 C 7087, Henry alleged violations in regard to an IRS Deficiency Notice received on December 13, 2004. While both cases allege various fraudulent and improper acts by government agents and officials, this court did not reach the merits of those allegations in concluding that Henry's claims in the 06 C 7080 case were time barred. The statute of limitations ruling was solely for the timing of receipt and filing in regards to the Deficiency Notice of December 13, 2004. It has nothing to do with the Notice of Intent to Levy of December 11, 2006, the subject matter of the second suit.

2007 WL 9772367, at *1.

The same logic applies here, but in even greater measure. Like *Henry*, the ultimate disposition of the state law claim allegations that the Moving Defendants rely upon did not involve a decision on the merits. Unlike that case, the parties are not identical between the first and second suits. And in regards to the same claims, the new suit is grounded in causes of action that are new, unique, and have never been previously brought. Further, as to subjects that were involved and may have overlapped, they are brought by six new plaintiffs and involve issues upon which there was no determination of those on the merits given the dismissal for lack of subject matter jurisdiction. On this point, and rejecting the argument advanced here by the City and Park District

9

that both suits involved government regulation questions, the *Henry* court first gave a narrow construction to the phrase "relate to the same subject matter," in Local Rule 40.3(b)(2) when it concluded that "[w]hile both cases allege various fraudulent and improper acts by government agents and officials, this court did not reach the merits of those allegations in concluding that Henry's claims in the 06 C 7080 case were time barred." (*Id.*)

It seems beyond dispute that this local rule was not intended to allow for the wholesale disregard of the long-established principle of assignment by rotation. That is especially true because the Rule in question has two distinct features that give it extraordinary breadth and power. The Rule does not require any motion by the defendant, but simply says that the matter "shall be assigned," to the first judge. That powerful command would be dangerous if the phrase "the same parties and relating to the same subject matter" in Local Rule 40.3(b)(2) were read to cover cases in which only some (indeed a minority) of the same parties and only some of the same subject matter and legal theories. *Henry* stands for the opposite proposition that all parties must be identical where the same subject matter requires identical facts and theories. Because all the parties and claims and subject matter are not the same, Local Rule 40.3(b)(2) is inapplicable.

The Moving Defendants' reliance upon *Cua v. Corsolutions Medical, Inc.*, 2005 WL 1661984 (N.D. Ill. July 13, 2005) does not support a different result. In that case, plaintiff argued that Local Rule 40.3(b)(2) required the court to dismiss a counterclaim that Corsolutions filed in a breach of contract claim because the defendant had chosen previously to file an independent claim before Judge Moran for breach of contract. Before any action had been taken on that claim, the defendant chose to counterclaim in the original action. The plaintiff insisted that the counterclaim had to be dismissed as forum shopping and was strongly rebuffed by the District Court.

> It is true that one purpose of L.R. 40.3(b)(2) is to prevent forum (or, more precisely, judge-shopping). However, any defendant who has a permissive counterclaim also

10

> has a narrow window in which to forum shop. That is because a defendant with a permissive counterclaim can choose to proceed before the judge presiding over the claim against it or it can choose to file its claim as a separate case. But nothing in Corsolutions' actions suggests that it has engaged in forum shopping. Here, Corsolutions dismissed the action before Judge Moran before any acts had been taken after the filing of the case. If Corsolutions had chosen to file an action as a separate case, began litigating that case, and then dismissed it after it suffered adverse rulings, then the Court might reach a different conclusion. The Court holds that L.R. 40.3(b)(2) does not require the dismissal of Corsolutions' counterclaims, and Cua's motion is DENIED.

2005 WL 1661984, at *1.

Similarly inapplicable is the Moving Defendants' reliance on *Konrath v. Konrath,* No. 16 C 10801, 2016 WL 6962823 (N.D. Ill. Nov. 29, 2016). That case did not involve a motion for reassignment, but instead a review of an *in forma pauperis* application, in which the plaintiff had a lengthy history of filing what appeared to be countless number of cases. The district court did acknowledge that:

> this District Court has sensibly adopted LR 40.3(b)(1), which provides for direct assignment to the same judge rather than the normal computer-driven random assignment system under certain circumstances. It is obvious that a judge who is already aware of a plaintiff's prior litigation history is often likely to have knowledge of some factor or factors that may be relevant to the proper disposition of that same plaintiff's current litigation—factors of which a judge with no prior exposure to the litigant is unaware.

2016 WL 6962823, at *1.

*Konrath's* ultimate holding does nothing to undermine the proposition that a perfect identity of parties is necessary for the invocation of Local Rule 40.3(b)(2).

### III. Policy Interests Favor Denial Of The Motion For Reassignment.

The Moving Defendants also suggest that certain policy *related* issues support their Motion, but those too are not triggered by Plaintiffs' new complaint. If in *Konrath*, the court was familiar with the multiple litigation antics of a single plaintiff, in this case, this Court does not have knowledge of the six other plaintiffs' litigation history, and has no history with any of the

11

plaintiffs in regards to the crux of the new federal and regulatory issues raised and identified in the complaint. None of the plaintiffs have appeared before the court on these new claims, nor have the defendants. Similarly, there is no efficiency associated with prior exposure in that the predominant issues involve different issues.

    The Moving Defendants also suggests that the Plaintiffs are forum shopping. They write:

> The presence of additional parties and claims in POP II does not defeat application of Local Rule 40.3(b)(2). Otherwise, a plaintiff could evade the rule and its purposes simply by dismissing its claims in a first case and then refiling a second case shortly thereafter making the same claims against the same defendants but also adding new parties and claims. But Local Rule 40.3 serves "to prevent forum (or, more precisely, judge-) shopping." Cua v. Corsolutions Med., Inc., No. 04 C 8033, 2005 WL 1661984, at *1 (N.D. Ill. July 13, 2005).

(Motion at 4)

    That claim could not be more inaccurate. There is no case law cited supporting the invocation of Local Rule 40.3.(b)(2) in cases where different parties were involved in the second litigation. The second sentence correctly states that Section 40.3(b)(2) is intended to prevent parties from dismissing a case before an adverse ruling in order to relitigate before a second judge. But nothing of the sort has happened here: the plaintiffs in the original action have brought this case on appeal; have filed an additional motion to reopen the case under Rule 60(b); filed a supplemental brief on standing before the Seventh Circuit Court of Appeals; filed a petition for rehearing; and filed a petition for certiorari before the Supreme Court, which was denied on April 26, 2021 (which dealt with issues under 42 U.S.C. 1983, which are unrelated to the newly filed complaint).

    There is no strategic behavior by the Plaintiffs in filing their new complaint, which falls clearly outside of Rule 40.3(b)(2). The only parties that are forum shopping are the Moving Defendants, who appear to believe that their victories in an earlier matter before this Court improve

12

their chances in the ongoing litigation. Indeed, consistent with the Seventh Circuit's decision, plaintiffs are entitled, if they choose, to proceed in Illinois state court with their state law claims that are focus of the Moving Defendants' attention, and such matters would not then be before this Court; that could not be seen as forum shopping. Likewise, there is no question that the regulatory, statutory, and constitutional claims that have been raised were not at issue (nor could they have been earlier) and also unquestionably subject to random selection. Certainly, from the perspective of the main claims and from six new plaintiffs and ten new defendants, there cannot be a serious suggestion of forum shopping; filing a new suit with new plaintiffs, new defendants and new claims simply cannot be interpreted as forum shopping.

If anything, the concern about forum shopping is demonstrated by the Moving Defendants and their effort to avoid the random assignment of this matter, who appear to believe that this Court is friendly to their positions and perhaps predetermined the matter based on earlier rulings and characterizations, and have sprinted ahead to try and accomplish what is a strategic decision, nothing more or less.

## CONCLUSION

For the reasons set forth above, the motion for reassignment must be denied.

Dated: April 26, 2021

Respectfully submitted,

Protect Our Parks, Inc.; Nichols Park Advisory Council; Stephanie Franklin; Sid E. Williams; Bren E. Sheriff; W.J.T. Mitchell; and Jamie Kalven

By: /s/ Michael Rachlis
One of their attorneys

Richard Epstein
16 Thomas Place
Norwalk CT 06853
Raepstein43@gmail.com

13

Michael Rachlis (IL Bar No. 6203745)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3950 (gen.)
(312) 733-3952 (fax)
mrachlis@rdaplaw.net

14